# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY L. RECTOR,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-524
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Timothy L. Rector brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of

errors (Doc. 15), the Commissioner's response in opposition (Doc. 23), and plaintiff's reply

memorandum (Doc. 24).

## I. Procedural Background

Plaintiff filed an application for DIB and SSI in January 2013, alleging disability since

December 15, 2012 due to chronic obstructive pulmonary disease ("COPD"), back pain, left

ankle pain, right shoulder rotator cuff, and neck pain. The application was denied initially and

upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before

administrative law judge ("ALJ") Anne Shaughnessy on March 23, 2016. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing. On August 17, 2016, ALJ

Shaughnessy issued a written decision denying plaintiff's application. Plaintiff's request for

review by the Appeals Council was denied, making the decision of ALJ Shaughnessy the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

ALJ Shaughnessy applied the sequential evaluation process and made the following

findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, December 15, 2012, the [plaintiff] has had the following severe impairments: obesity, chronic obstructive pulmonary disorder (COPD); depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, December 15, 2012, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that since December 15, 2012, the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can climb ladders, ropes and scaffolds, and stoop and crawl occasionally. The [plaintiff] should avoid concentrated exposure to temperature extremes and pulmonary irritants such as fumes, odors, dusts and gases. He should have only occasional interaction with coworkers and supervisors.

6. Since December 15, 2012, the [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. Prior to the established disability onset date, the [plaintiff] was an individual closely approaching advanced age. On October 18, 2014, the [plaintiff]'s age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

---

[1] Plaintiff has past relevant work as a clergy member, swimming pool installer and servicer, carpenter/structural manager, construction labor supervisor, and business owner. (Tr. 25).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to October 18, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills. Beginning on October 18, 2014, the [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to October 18, 2014, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[2]

11. Beginning on October 18, 2014, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 404.1560(c), 404.1566, 416.920(c), and 416.966).

12. The [plaintiff] was not disabled prior to October 18, 2014, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The [plaintiff] was not under a disability within the meaning of the Social Security Act at any time through March 31, 2014, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 19-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] The ALJ relied on the VE's testimony to find that prior to October 18, 2014, plaintiff would be able to perform the requirements of representative occupations such as mail clerk (50,000 jobs nationally), routing clerk (68,000 jobs nationally), and inspector (100,000 jobs nationally). (Tr. 26, 48-49).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ (1) improperly weighed the medical opinions of record, (2) erroneously gave "great weight" to the opinions of the state agency medical consultants, who did not review the entire record, and (3) erroneously applied the age criteria of the Medical-Vocational Guidelines as plaintiff was within a few months of turning age 55. (Doc. 15). The Court will consider plaintiff's first and second assignments of error together.

5

1. **Whether the ALJ erred in weighing the medical opinions of record**

   a. *The parties' arguments*

Plaintiff argues that the ALJ failed to comply with 20 C.F.R.§§ 404.1527 and 416.927 in weighing the opinions of his treating physicians, Dr. Dumont and Dr. O'Dea. (Doc. 15 at 5). Plaintiff argues that the ALJ failed to give good reasons for assigning "little weight" to the opinion of Dr. Dumont, who has been his treating physician for 12 years, and failed to explain why a light RFC is still warranted in light of Dr. Dumont's opinion. (*Id.* at 6). Plaintiff argues that the ALJ failed to disclose what evidence supports this conclusion. (*Id.*). Likewise, plaintiff argues that the ALJ failed to give good reasons for assigning "little weight" to the opinion of Dr. O'Dea, who has been his treating physician since May 2014, and failed to cite specific evidence for her conclusion supporting a light RFC. (*Id.* at 7). Plaintiff also argues that the ALJ erred in assigning "some weight" to the opinion of consultative examiner Dr. Bailey and failed to explain why she dismissed Dr. Bailey's opinion as vague. (*Id.*). Plaintiff further argues that the ALJ erred in assigning "great weight" to the opinions of the state agency medical consultants, who completed assessments without the benefit of a full record. (*Id.* at 8).

In response, the Commissioner contends that the ALJ reasonably weighed the medical opinions of record. (Doc. 23 at 4-10). The Commissioner maintains that the ALJ reasonably afforded Dr. Dumont's opinion little weight given the objective medical findings and successful treatment, as well as improvement in activities. (*Id.* at 7). The Commissioner maintains that the ALJ reasonably afforded Dr. O'Dea's opinion little weight because the evidence of record did not support the restrictive limitations assessed. (*Id.*). The Commissioner argues that the ALJ reasonably afforded Dr. Bailey's opinion "some weight" because it was vague and did not specifically define plaintiff's moderate and mild exertional abilities. (*Id.* at 7-8). The

Commissioner argues that it was not an error for the ALJ to give "great weight" to the state agency reviewing physicians, who did review Dr. Dumont's opinions. (*Id.* at 8). The Commissioner maintains that plaintiff offers no details regarding the records that the state agency physicians failed to review, nor does he explain how these records show a marked departure from those records reviewed by the physicians. (*Id.*).

In reply, plaintiff argues that the opinions of his treating physicians are consistent with the record as a whole. (Doc. 24 at 1). Plaintiff argues that the ALJ cites to only one piece of evidence in the record in weighing Dr. Dumont's opinion. (*Id.* at 4). Plaintiff also points out that the state agency reviewers at both the initial and reconsideration levels could not compute an accurate RFC because of insufficient evidence and therefore, their opinions were poorly supported and based on an incomplete file. (*Id.* at 2-4).

  b. *Medical opinions*

Dr. Francis Dumont, plaintiff's treating primary care physician of 12 years, completed a physical RFC assessment on May 20, 2013. (Tr. 509). Dr. Dumont estimated that plaintiff could stand/walk less than one hour in an 8-hour workday. (*Id.*). Dr. Dumont also estimated that plaintiff could sit one to two hours without interruption in an 8-hour workday. (*Id.*). He estimated that plaintiff was markedly limited in pushing/pulling, bending, reaching, handling, and repetitive foot movements. (*Id.*). Dr. Dumont indicated that plaintiff is "unemployable" and that plaintiff's physical and/or mental limitations were expected to last 12 months or more. (*Id.*).

Dr. Dumont also completed a physical RFC medical source statement on October 3, 2013. (Tr. 544-47). Dr. Dumont listed plaintiff's diagnoses as chronic pain, cervical disc disease, bilateral shoulder pain, right lumbosacral pain, lumbar radiculopathy, COPD, gastroesophageal reflux disease ("GERD"), hypertension, and anxiety. (Tr. 544). Dr. Dumont

7

listed plaintiff's prognosis as "fair." (*Id.*). Dr. Dumont opined that plaintiff could frequently lift

less than 5 pounds, occasionally lift 5 pounds, rarely lift 10 pounds, rarely lift 15 pounds, and

rarely lift 20 pounds or more. (*Id.*). He opined that plaintiff could occasionally carry less than 5

pounds, rarely carry 5 pounds, and never carry more than 10 pounds. (Tr. 544-45). Dr. Dumont

noted that plaintiff could not walk one city block or more without rest or severe pain. (Tr. 545).

He noted that plaintiff has problems with balance when ambulating and has problems with

stooping, crouching, and bending. (*Id.*). Dr. Dumont estimated that plaintiff needed to lie down

and/or recline about four hours during an 8-hour work day. (*Id.*). He estimated that plaintiff

could only sit and stand/walk about one-hour during an 8-hour work day. (*Id.*).

Dr. Dumont opined that plaintiff needed to take a 15 to 30-minute unscheduled break

every hour during an 8-hour work day. (*Id.*). Dr. Dumont noted that plaintiff could climb stairs,

but could not climb ladders, scaffolds, ropes, or ramps. (Tr. 546). Dr. Dumont opined that

plaintiff's pain and severe stress would frequently interfere with the attention and concentration

needed to perform simple work tasks. (*Id.*). Dr. Dumont estimated that plaintiff would be "off-

task" more than 30% of an 8-hour work day. (Tr. 547). He estimated that plaintiff would likely

be absent from work 5 days or more a month as a result of his physical and mental impairments.

(*Id.*). Dr. Dumont opined that plaintiff is unable to obtain or retain work in a competitive work

environment 8-hours a day, 5 days per week for a continuous period of six months or more.

(*Id.*).

Dr. James O'Dea, plaintiff's primary care treating physician since May 2014, completed

a physical RFC statement on February 9, 2016. (Tr. 1166-69). Dr. O'Dea listed plaintiff's

diagnoses as: degenerative disc disease, arthritis, and COPD. (Tr. 1166). Dr. O'Dea described

plaintiff's prognosis as "poor." (*Id.*). Dr. O'Dea stated that plaintiff's impairments, symptoms,

and limitations have lasted since December 8, 2012. (*Id.*). Dr. O'Dea opined that plaintiff's pain

is severe enough to interfere with the attention and concentration needed to perform simple work

tasks. (*Id.*). He indicated that plaintiff has problems with balance when ambulating and

problems with stooping, crouching, and bending. (Tr. 1167). Dr. O'Dea opined that plaintiff

could sit 30 minutes before needing to stand up, walk around, or lie down. (*Id.*). Dr. O'Dea

opined that plaintiff could stand 15 minutes before needing to sit down, walk around, or lie

down. (*Id.*). Dr. O'Dea estimated that plaintiff could walk 5 minutes before needing to sit down,

lie down, or stand. (*Id.*). Dr. O'Dea indicated that plaintiff could sit less than one hour during an

8-hour work day. (*Id.*). He estimated that plaintiff needs to take two to three unscheduled 30-

minute breaks during an 8-hour work day. (Tr. 1168). Dr. O'Dea opined that plaintiff could

occasionally lift less than 5 pounds, rarely lift 5 pounds, and never lift over 10 pounds. (*Id.*). He

opined that plaintiff has no ability to climb stairs, ladders, scaffolds, ropes, or ramps. (Tr. 1169).

Dr. O'Dea opined that plaintiff needs to avoid dust, fumes, humidity, and cold due to his COPD.

(*Id.*). Dr. O'Dea estimated that plaintiff would be absent from work 5 or more days a month as a

result of his physical and mental impairments. (*Id.*). Dr. O'Dea estimated that plaintiff could be

expected to perform a job, 8-hours a day, 6 days a week on a sustained basis less than 50% of the

time. (*Id.*).

Dr. Jennifer Bailey completed a physical consultative examination at the request of the

state agency on May 22, 2013. (Tr. 519-526). Dr. Bailey noted that plaintiff had normal grasp,

manipulation, pinch, and fine coordination in both hands. (Tr. 519). She noted that plaintiff can

ambulate on a level terrain for no more than 1-2 blocks without associated shortness of breath.

(Tr. 523). Dr. Bailey noted that plaintiff has a ten-year history of back pain and prolonged

ambulation or standing exacerbates the pain, as does bending, stooping, or lifting heavy objects.

(*Id.*). Dr. Bailey indicated that plaintiff has never undergone any surgical procedures, cortisone injections, or physical therapy. (*Id.*). On physical examination, plaintiff had a normal gait without the use of ambulatory aids and was comfortable in both sitting and standing positions. (Tr. 524). Plaintiff had normal cervical flexion of the spine, forward flexion of the extended arms, and muscle and grasp strength. (*Id.*). Plaintiff had slight difficulty bending forward at the waist to 80 degrees. (*Id.*). Plaintiff demonstrated straight leg raises normal to 90 degrees bilaterally and lateral motion of the spine normal to 30 degrees bilaterally. (Tr. 525). Dr. Bailey assessed exogenous obesity, shortness of breath with heavy tobacco abuse, and back pain. (*Id.*). Dr. Bailey observed no evidence of lumbar radiculopathy. (*Id.*). Dr. Bailey noted:

> Based on the findings of this examination, the patient appears capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, or handling objects. There are no visual and/or communication limitations nor are there environmental limitations.

(Tr. 526).

On July 23, 2013, Dr. Dimitri Teague reviewed the record on initial consideration at the request of the state agency. (Tr. 60-61). Dr. Teague indicated that there was insufficient evidence to formulate an adequate RFC, particularly with respect to the level of plaintiff's lung impairment. (Tr. 61). Dr. Teague noted that two separate pulmonary function tests were found to be invalid given plaintiff's poor effort. (*Id.*).

On March 5, 2014, state agency physician Dr. Kourosh Golestany reviewed the record on reconsideration and concluded, "Available medical records reveal insufficient evidence to assess the physical impairments" and "[a]n accurate RFC cannot be drafted. . . ." (Tr. 601). Nevertheless, on May 23, 2014, Dr. Golestany completed a physical RFC assessment opining plaintiff could perform light work. (Tr. 623-30). Dr. Golestany indicated that there were no

10

medical source statements regarding the plaintiff's physical capacities located in the file (Tr. 629), despite two assessments from May and October 2013 by Dr. Dumont, plaintiff's treating physician.

   c. *The ALJ's decision*

The ALJ afforded the opinions of Dr. Dumont "little weight." (Tr. 24). The ALJ indicated that Dr. Dumont's opinions were not supported by the evidence of record, which showed that plaintiff had some difficulties, but ambulated with a normal gait and had a full range of motion in his right upper arm. (*Id.*) (citing Tr. 597-98). The ALJ stated: "the [plaintiff's] symptoms worsened, such as an antalgic gait and painful range of motion, but a light residual functional capacity is still warranted." (*Id.*).

The ALJ afforded "little weight" to the opinion of Dr. O'Dea. (*Id.*). The ALJ explained that "[t]he evidence does not support such restrictive limitations, but supports that the [plaintiff] is capable of a light residual functional capacity." (*Id.*).

The ALJ afforded "some weight" to the opinion of consultative examiner Dr. Bailey. (*Id.*). The ALJ noted that "[s]he had the opportunity to examine and assess the [plaintiff], but her opinion is rather vague and does not give specifics as to what the [plaintiff] is capable of doing." (*Id.*).

The ALJ assigned "great weight" to the physical assessments of the state agency medical consultants. (Tr. 25). The ALJ noted that these physicians found plaintiff to be capable of performing a light RFC, "which is consistent and supported by the evidence of record." (*Id.*).

   d. *Analysis*

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. *Snell v. Comm'r of Soc. Sec.*, 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30,

2013); 20 C.F.R. §§ 404.1527, 416.927. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). The opinions of non-examining physicians are afforded the least deference under the regulations. *Woodcock v. Comm'r. of Soc. Sec.*, 201 F. Supp.3d 912, 919 (S.D. Ohio 2016). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion

is, how consistent the opinion is with the record as a whole, and other factors which tend to

support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*,

710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given to a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This

procedural requirement "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting

*Wilson*, 378 F.3d at 544).

The Court finds that the ALJ failed to properly weigh the medical opinions of record and

failed to articulate good reasons why Dr. Dumont and Dr. O'Dea's opinions were only entitled to

"little weight." While the ALJ acknowledged Dr. Dumont was a treating physician (Tr. 22), she

did not recognize Dr. O'Dea's treating relationship with plaintiff. In addition, nowhere in the

ALJ's decision does she acknowledge the existence of the treating physician rule that governs

the weight to afford a treating physician's opinion. The ALJ did not consider whether the

opinions of Drs. Dumont and O'Dea were entitled to "controlling weight," *see* 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 376, and she did not balance the regulatory

factors in determining what weight to give the opinions of Drs. Dumont and O'Dea. *See* 20

C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

In addition, the Court is unable to discern the evidentiary basis for the ALJ's decision to discount the opinions of plaintiff's treating physicians. The ALJ gave only "little weight" to Dr. Dumont's opinions because they were "not supported by the evidence of the record." (Tr. 24). The ALJ seemingly came to this conclusion based on one orthopedic examination in December 2013 where plaintiff walked with a normal gait and had a normal range of motion, strength, and tone in his left upper extremity. (Tr. 24) (citing Tr. 497-98). However, the ALJ selectively parsed the record and ignored several contrary examinations in 2012 and 2013 revealing that plaintiff had an altered gait and a more limited range of movement. (Tr. 495, 498, 500, 504, 582, 586, 589). The ALJ also noted that while plaintiff's symptoms worsened, "a light residual functional capacity is still warranted," without any explanation or citation to the record evidence in support of this conclusion. (Tr. 24). Likewise, the ALJ dismissed Dr. O'Dea's opinion because "the evidence does not support such restrictive limitations, but supports that the [plaintiff] is capable of a light residual functional capacity." (*Id.*). However, the ALJ failed to explain why the evidence does not support Dr. O'Dea's opinion, and the Court is unable to discern the evidentiary basis for this conclusion. *See Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

The ALJ's opinion also does not reflect a consideration of other relevant examination findings and clinical records from Dr. Dumont himself. For example, in April 2013, plaintiff visited Dr. Dumont for COPD and hypertension. (Tr. 514). Plaintiff reported having increased difficulties with his COPD, including multiple hospitalizations, with a hospitalization resulting in

home oxygen use. (*Id.*). On examination, plaintiff had weakness of the cervical spine on palpation and a moderately reduced range of motion in the cervical and lumbar spine. (Tr. 517). Plaintiff walked with an antalgic gait. (*Id.*). Dr. Dumont assessed COPD, hypertension, hyperlipemia, anxiety, chronic pain, and GERD. (*Id.*). Plaintiff visited Dr. Dumont again in May 2013 complaining of pain in the neck, lumbar spine, and left knee. (Tr. 510). Plaintiff reported that he had not been working due to his limiting lungs and worsening pain. (*Id.*). Dr. Dumont observed chronic cough, dyspnea, and wheezing. (Tr. 511). On examination, plaintiff had severe pain with range of motion in the lumbar spine. (Tr. 512). The ALJ made no mention of these findings (Tr. 22), which appear to contradict the specific findings upon which the ALJ relied. (Tr. 24).

The Court also finds that the ALJ's decision does not reflect a consideration of the regulatory factors in assessing the weight to the treating physicians' opinions. Where, as here, an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must nevertheless balance certain regulatory factors in assessing the weight to give that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Here, the ALJ made no attempt to apply the above regulatory factors. The ALJ did not discuss Dr. Dumont's long-standing treatment history with plaintiff dating over 12 years, nor did the ALJ discuss the frequency of his examinations of plaintiff, the nature and extent of his treatment relationship, the supportability of his opinion, or the consistency of his opinion with the record as a whole. *See id. See also Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The ALJ likewise did not discuss Dr. O'Dea's treatment history with plaintiff since May 2014, nor did the ALJ discuss the other requisite factors. *Id.*

The Court cannot say that the opinions of Dr. Dumont and Dr. O'Dea are "so patently deficient that the Commissioner could not possibly credit" it and therefore excuse the ALJ's

failure to conduct a meaningful review in this case. *Wilson*, 378 F.3d at 546-47. Dr. Dumont had a long-standing treatment relationship with plaintiff and cited ongoing care, consult notes, physical exams, and x-rays as the medical basis supporting plaintiff's physical impairments and symptoms. (Tr. 509, 544-47). Clinical findings, in addition to those cited above, included peripheral numbness in the hands, lumbar spinal stenosis, and rotation issues of the cervical spine. (Tr. 544). Likewise, Dr. O'Dea had a treatment history with plaintiff (albeit five months prior to the date plaintiff became disabled) and cited progress notes, physical examinations, and plaintiff's history and medical file as the basis for his opinion. In light of both physicians' treatment histories with plaintiff, along with the objective and clinical findings of record, the Court cannot say that the Commissioner "could not possibly" credit the opinions of Dr. Dumont and Dr. O'Dea in determining whether plaintiff was disabled prior to October 18, 2014, particularly in light of the temporal proximity of their treatment to plaintiff's date last insured. Since the ALJ failed to give good reasons for assigning the treating physicians' opinions "little weight" and adequately consider the factors listed in Sections 404.1527(c) and 416.927(c), the ALJ's rejection of Drs. Dumont and O'Dea's opinions is not supported by substantial evidence.

In addition, the Court is unable to discern the ALJ's basis for granting "great weight" to the opinions of the state agency physicians. (Tr. 25). The ALJ stated that the "state agency medical consultants . . . found the claimant to be capable of performing a light residual functional capacity, which is consistent and supported by the evidence of record." (*Id.*). However, Dr. Teague did not even provide an opinion on plaintiff's RFC, stating that "[a]n accurate RFC cannot be drafted. . . ." (Tr. 61). Dr. Golestany agreed that "[a]n accurate RFC cannot be drafted" (Tr. 601) when he reviewed the record on reconsideration, yet he provided an RFC assessment several months later without any explanation for his change of opinion. (Tr.

623-30). In addition, Dr. Golestany incorrectly stated there were no medical source statements from plaintiff's treating physicians in the record when in fact Dr. Dumont had provided two such assessments. (Compare Tr. 629 with Tr. 509, 544-47). Under these circumstances, the Court is unable to conclude that the ALJ's decision to give the opinions of both state agency physicians "great weight" is supported by substantial evidence.

Accordingly, plaintiff's first and second assignments of error should be sustained.

### 2. Whether the ALJ erred in applying the Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred by mechanically applying the age criteria of the Medical-Vocational Guidelines ("the Grid") as his date last insured was within a few months of his 55th birthday on October 18, 2014, the date the ALJ found plaintiff to be disabled. (Doc. 15 at 8). Plaintiff argues: "[b]ecause of the severity of [his] conditions, he should be granted Social Security Benefits without a mechanical application of the Medical-Vocational Guidelines as [he] was within a few months of his 55th birthday on his date last insured." (*Id.* at 8).

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff could perform a range of light work, with additional non-exertional limitations, during the period before October 18, 2014. (Doc. 23 at 11). The Commissioner states that it was appropriate for the ALJ to apply the grid rules as a framework for the period preceding this date and consult with a VE regarding plaintiff's ability to perform light work. (*Id.*).

The ALJ determined that "[p]rior to the established disability onset date, the [plaintiff] was an individual closely approaching advanced age." (Tr. 25). The ALJ noted that "[p]rior to October 18, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

[plaintiff] is 'not disabled' whether or not the [plaintiff] has transferable job skills." (Tr. 25). When plaintiff turned 55 years old on October 14, 2014, his age category changed to an individual of advanced age and he was found disabled under Grid Rule 202.06. (Tr. 26). Plaintiff's established disability onset date of October 14, 2014 is six months and 18 days after his insured status lapsed for purposes of his DIB application.

The regulations allow for "some flexibility between the age categories in 'borderline' situations." *Bowie v. Comm'r*, 539 F.3d 395, 396 (6th Cir. 2008). Specifically, 20 C.F.R. § 404.1563(b) provides:

> We will not apply the age categories mechanically in a borderline situation. If you are within *a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b) (emphasis added). By the same token, "[t]he fact that age categories are not to be applied mechanically . . . does not mean that a [plaintiff] must be moved mechanically to the next age category whenever [his] chronological age is close to that category." *Turner v. Astrue*, No. 3:10-cv-186, 2011 WL 2783832, at *4 (S.D. Ohio July 11, 2011) (Black, J.) (quoting *Van der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 528 (6th Cir. 2006) (internal quotations omitted)).

The first question that must be addressed is whether six months and 18 days constitutes a "borderline situation" that requires consideration of the older age category in determining whether plaintiff was disabled as of his date last insured. The term "a few days to a few months" is not further defined in the regulations. In an attempt to illuminate the outer edge of this term, this Court recently undertook a comprehensive review of the caselaw within and outside of the Sixth Circuit. *See Turner*, 2011 WL 2783832, at *6-10 (and numerous cases cited therein). In

*Turner*, the plaintiff was seven and one-half months from reaching an older age category under

the Grid. In assessing whether the plaintiff fell into a "borderline situation" under the §

404.1563(b), such that the higher age category should be used to determine whether the plaintiff

was disabled on her date last insured, the Court in *Turner* recognized that "[t]he Sixth Circuit has

not sought to fashion a hard and fast rule as to the amount of time that falls within the term 'a

few days or months.'" *Turner*, 2011 WL 2783832, at *6. Cases within and outside of the Sixth

Circuit have come to varying conclusions as to when a claimant is "within a few days to a few

months" of a higher age category in the Medical Vocational Guidelines. Based on its

comprehensive analysis of the caselaw and then-exiting HALLEX,[3] the Social Security

Administration's *Hearings, Appeals and Litigation Law Manual*, which provides guidance on

borderline age cases, the *Turner* Court determined that seven and one-half months was a

borderline situation under § 404.1563(b). *Turner*, 2011 WL 2783832, at *8.

As of March 26, 2016, HALLEX provisions clarify that (1) when a claimant is "within a

few days to a few months" of a higher age category in the Medical-Vocational Guidelines and

(2) use of the higher age category would result in a finding of disability, an ALJ must consider

whether to apply the higher category. HALLEX 1-2-2-42. HALLEX also clarified that a "few

days to a few months" generally means "a period not to exceed six months." *Id.* If both

conditions above are met, HALLEX counsels an ALJ to use a "sliding scale" approach, wherein

the "claimant must show that [certain] factor(s) have a progressively more adverse impact on his

or her ability to adjust to other work as the period between the plaintiff's actual age and

---

[3] The HALLEX is a procedural manual utilized by the Commissioner "that sets forth safeguards and procedures for these administrative proceedings." *Robinson v. Barnhart*, 124 F. App'x 405, 410 (6th Cir. 2005). While HALLEX provisions are binding on the Social Security Administration, they are not binding on reviewing courts. *Bowie*, 539 F.3d at 399. The HALLEX provision in question is available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html.

attainment of the next higher age category lengthens." HALLEX 1-2-2-42. Relevant factors for the ALJ to consider include residual functional capacity combined with age, education, and work experience. *Id.*

The Sixth Circuit explained in *Bowie* that an ALJ "does not have a *per se* procedural requirement to address borderline age categorization in every borderline case" under 20 C.F.R. § 404.1563(b). *Bowie*, 539 F.3d at 399. However, the Sixth Circuit noted:

> Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence. For example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. *See* Rule 201.18, App. 2 to Subpart P of 20 C.F.R. § 404; HALLEX II–5–3–2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold.

*Bowie*, 539 F.3d at 399-401.

Applying these standards to the instant case, the ALJ's failure to consider whether plaintiff's age category falls within a "borderline situation" constitutes reversible error. Plaintiff's last insured date was approximately six months and 18 days prior to his 55th birthday. Thus, in light of *Turner* (seven and one-half months) and HALLEX guidelines, the Court finds that plaintiff's circumstances could fall within the "few days to few months" requirement, and therefore, he could satisfy both elements for a borderline situation under § 404.1563(b).

After determining that plaintiff's case is a borderline situation under § 404.1563(b), a plaintiff must show that certain factors "have a progressively more adverse impact on his . . . ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens." HALLEX 1-2-2-42. While there has not been much

development on when a claimant meets the "additional vocational adversity" requirement, courts have considered situations where the claimant has psychological impairments in addition to physical impairments, which "constitute adversities beyond exertional limitations." *Turner*, 2011 WL 2783832, at *9 (citing *Faulkner v. Astrue*, No. 1:09-cv-105, 2010 WL 3221834, at *2 (W.D. Ky. 2010)). Courts have also found additional vocational adversity where a claimant suffered from morbid obesity and attendant health problems, including diabetes, hypertension, and mild osteoarthritis of the lumbar spine. *Turner*, 2011 WL 2783832, at *8-9 (citing *Kersey v. Astrue*, No. 2:09-cv-975, Doc. 19 (E.D. Cal. March 29, 2010)). The number of impairments suffered by a claimant is also instructive in determining the question of additional vocational adversity. *See Turner*, 2011 WL 2783832, at *9 (finding additional vocational adversity where plaintiff suffered from depressive disorder, morbid obesity and associated problems, pulmonary obstructive disease and knee trouble); *Russell v. Comm'r of Soc. Sec.*, 20 F. Supp.2d 1133, 1136 (W.D. Mich. 1998) (finding additional vocational adversity where plaintiff suffered from degenerative arthritis, serious heart problems, a lung impairment, and diabetes). Here, plaintiff suffers from obesity, COPD, chronic back pain, and shoulder pain. Aside from the exertional limitations posed by these physical impairments, plaintiff also suffers from anxiety disorder and depressive disorder. According to Dr. Twehues, the consultative examining psychologist, these mental impairments result in additional non-exertional limitations, including difficulties coping with major changes in his work routine, as well as everyday minor workplace pressures when he is feeling particularly down or agitated. (Tr. 537). Notably, the ALJ granted "great weight" to the opinion of Dr. Twehues (Tr. 24), but the only limitation the ALJ imposed from a mental standpoint was limiting plaintiff to "only occasional interaction with coworkers and supervisors" (Tr. 21), without consideration or discussion of the additional vocational adversities assessed by

Dr. Twehues.[4]  Taken as a whole, plaintiff's physical and mental impairments are sufficient to show a progressively more adverse impact on his ability to adjust to other work.  The ALJ did not mention 20 C.F.R. § 404.1563(b) or discuss whether a borderline situation existed in assessing plaintiff's eligibility for DIB.  Although this is not a *per se* procedural requirement in every case, an ALJ is nevertheless obligated "to provide enough explanation of [her] overall disability determinations to assure reviewers that [her] decisions are supported by substantial evidence" and "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Bowie*, 539 F.3d at 400-01.  The Court is unable to discern from the ALJ's decision whether she considered using the older age category after evaluating the overall impact of all the factors in plaintiff's case.  20 C.F.R. § 404.1563(b).  As such, the Court concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, plaintiff's third assignment of error should be sustained.

**III.  This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  This matter should be reversed and remanded for further proceedings with instructions to the ALJ to determine whether plaintiff falls into a "borderline situation" under 20 C.F.R. § 404.1563(b), such that a higher age category should be used to determine whether plaintiff was disabled, and thus entitled plaintiff to a period of disability and disability insurance benefits as of March 31, 2014, the date plaintiff was last insured.  On remand, the ALJ should also re-weigh the medical opinion evidence in accordance with this decision; reassess plaintiff's RFC, giving appropriate

---

[4] The Court notes that the ALJ gave "little weight" to the assessments of the state agency psychologists. (Tr. 25).

weight to the opinions of Dr. Dumont and Dr. O'Dea, including an explanation on the record for the weight afforded to their opinions; and develop further medical and vocational evidence as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 8/14/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY L. RECTOR,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-524
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).